THE BANK OF NOVA SCOTIA, demandante y apelado, *v.* JOSÉ J. BENÍTEZ, y CARLOS CARLE DUBOIS, y por éste, incapacitado, como sustituto, su tutor y representante legal TEODORO CARLE FÉLIX, demandados y apelante el último.

Núm. 7337.—*Sometido:* Noviembre 24, 1937. *Resuelto:* Febrero 18, 1938.

*Largé, Acevedo & Lecároz,* abogados del apelante; *Brown, González & Newsom,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Para fijar los hechos de este caso hemos tomado como base la estipulación de las partes de junio 15, 1935. Habiendo, pues, en consideración las alegaciones de la demanda admitidas y la documentación presentada y admitida en evidencia, aparece de los autos, en substancia, lo que sigue:

El 14 de enero de 1927 y en San Juan de Puerto Rico comparecieron ante el notario público Francisco González Fagundo, José J. Benítez, Miguel Ferrer en representación de su hermano Gabriel viudo de Teodosia Benítez Sampayo, las hermanas Josefa, Carlota y Arcadia Benítez Sampayo, y Augusto Ortiz, como defensor del menor José J. Benítez Sampayo, y otorgaron una escritura titulada de ''prórroga de contrato de comunidad de bienes.''

Como antecedentes hicieron constar que a la muerte de doña Carlota Sampayo, esposa del primer compareciente y madre de Teodosia, Josefa, Arcadia, Carlota y José J. Benítez Sampayo, por escritura pública de mayo 9, 1917, sus herederos inventariaron y liquidaron los bienes relictos y los dejaron en comunidad por término de diez años, y habiendo vencido dicho término y deseando permanecer de tal

modo en cuanto a todos los dichos bienes y a los demás adquiridos con dinero de la comunidad, pactaron lo que sigue:

Conservar indivisos los bienes de la comunidad y denominar ésta "José J. Benítez e Hijos;"

Conferir su administración a José J. Benítez con poderes entre otros para dirigir la explotación agrícola de los bienes de la comunidad y tomar para ello dinero a préstamo con garantías hipotecarias sobre los inmuebles, otorgando todos los documentos públicos y privados que fueren necesarios, autorizándolo expresamente "para firmar por la comunidad solidaria y mancomunadamente con la 'Benítez Sugar Company' todos los pagarés dados o que deban ser dados al Banco de Nova Scotia en conexión con todos los adelantos hechos o que deban ser hechos a dicha corporación por dicho banco;"

Repartir las pérdidas o ganancias de la comunidad en proporción al interés de cada condueño, pudiendo disponer cada uno de los hijos de doscientos cincuenta dólares mensuales y el padre de dos mil; sumas que se considerarían anticipos de beneficios con cargo a sus cuentas particulares a liquidarse anualmente;

Practicar un balance general después de liquidada la zafra de cada año pudiendo cada condueño disponer de sus beneficios, pero dejando en el fondo común la cantidad que acordaren para gastos de cultivo y fomento de los bienes, debiendo considerarse como gastos generales de la comunidad los del cultivo, contribuciones, sueldos y cualesquiera otros necesarios para el mejor desarrollo del negocio;

Reconocer a cada comunero su derecho a vender su participación en la comunidad en la forma especificada y a José J. Benítez el derecho que había venido ejerciendo de ocupar las casas de la comunidad situadas en Santurce y Vieques sin pagar canon alguno.

Desde 1928, vigente esa comunidad, el Banco de Nova Scotia le fué haciendo anticipos refaccionarios que liquida-

dos anualmente arrojaron siempre saldos a favor del banço que se fueron arrastrando hasta llegar a $756,000, en julio 1, 1933, fecha en que no habiéndose puesto de acuerdo los condueños para otorgar las prórrogas que habían venido otorgando, el banco tomó posesión de todas sus propiedades para administrarlas de acuerdo con lo pactado.

Mientras esto sucedía, Carlos Carle Dubois demandó en la Corte de Distrito de San Juan a José J. Benítez en cobro de un pagaré por $6,684.84 y para asegurar la efectividad de la sentencia que pudiera dictarse obtuvo una anotación de embargo sobre una parcela de terreno situada en Santurce con casa que figuraba inscrita en el registro a favor de José J. Benítez, practicándose la anotación en agosto 11, 1930.

Dictada sentencia en el pleito a favor de Dubois, quedó firme y expedido mandamiento para su ejecución mediante venta de la finca embargada, la comunidad José J. Benítez e Hijos se opuso iniciando una tercería dentro de la cual obtuvo la suspensión de la subasta. Expedida nueva orden de ejecución limitada al derecho, título e interés que el condueño José J. Benítez tuviera en la finca embargada, se anuló por la propia corte de distrito a gestión de la comunidad. No conforme con la anulación, apeló Dubois para ante este Tribunal Supremo que revocó la resolución apelada y devolvió el caso a la corte de su origen para ulteriores procedimientos de acuerdo con los términos de la opinión. *Carle Dubois* v. *Benítez*, 46 D.P.R. 188, 199.

Recibidos los autos en la corte de distrito se expidió nueva orden de ejecución y surgió entonces este otro pleito de tercería iniciado por The Bank of Nova Scotia en marzo de 1934 en el que se dictó primero un *injunction pendente lite* y luego se pronunció sentencia en los siguientes términos:

"Por los fundamentos de nuestra opinión que obra en autos y se hace formar parte de la presente, se declara y decreta que el crédito del demandante que se describe en la demanda de este pleito,

por ser un crédito contra la comunidad de bienes denominada 'José J. Benítez e Hijos' es preferente y tiene prelación en cuanto se refiere a los bienes de dicha Comunidad, sobre el crédito del demandado Carlos Carle Dubois consignado en la sentencia recaída en el pleito civil número 12,932 de esta corte, por haberse contraído este último por el condómino José J. Benítez Díaz privativamente y para su exclusivo beneficio. Se decreta que el demandado Carlos Carle Dubois tiene derecho a solicitar y obtener orden de ejecución para satisfacer la sentencia firme dictada a su favor en el referido caso civil número 12,932 de esta corte, debiendo en los edictos que se publiquen anunciando la subasta, en caso de que la propiedad que vaya a ser ejecutada sea el interés o participación que pueda tener el condómino José J. Benítez sobre la finca urbana embargada en dicho caso civil núm. 12,932, propiedad de la referida Comunidad, o sobre cualesquiera otros de los pertenecientes a dicha Comunidad, expresarse que el interés o participación que se vende en ejecución es el que pueda adjudicarse a José J. Benítez Díaz en dicha propiedad, luego de haberse liquidado y pagado las deudas de la Comunidad de Bienes 'José J. Benítez e Hijos.'

"Se deja sin efecto el *injunction* preliminar dictado en este caso por resultar ya improcedente en vista de los otros pronunciamientos de esta sentencia. Cada parte pagará sus costas."

No conforme Carle Dubois, interpuso el presente recurso de apelación.

No hay duda alguna de que la parcela de terreno con casa situada en Santurce que embargó Carle Dubois en agosto 11, 1930, para hacer efectiva la sentencia que pudiera obtener como luego obtuvo ordenando el pago de lo que personalmente le debía José J. Benítez, no pertenecía en el momento del embargo a Benítez solamente si que a Benítez y a sus hijos que habían todos decidido dejar sus bienes indivisos para ser administrados y explotados en comunidad de acuerdo con el contrato de enero 14, 1927.

Nada constaba en el registro cuando se practicó el embargo. La finca aparecía inscrita a favor de José J. Benítez casado con Carlota Sampayo, pero como son hechos admitidos y ciertos que la esposa murió, que el esposo y los hijos dejaron los bienes del matrimonio en comunidad y que

ésta subsistía a la fecha del embargo, el problema jurídico planteado debe resolverse habiendo en consideración tales hechos y además otro concreto en relación con la parcela embargada que también fué admitido y es. cierto, a saber, que por escritura pública inscrita en el registro, otorgada en agosto 18, 1930, o sea siete días después de la anotación del embargo, la comunidad José J. Benítez e Hijos otorgó un pagaré por veinte mil dólares garantizado con hipoteca constituída sobre la parcela y casa de que se trata y lo entregó en prenda al Banco de Nova Scotia como garantía colateral de la deuda refaccionaria que con él tenía contraída según ya dejamos consignado.

¿Qué adquirió Carle Dubois a virtud del embargo de que se trata? Adquirió un derecho a ejecutar la sentencia que pudiera dictarse a su favor en el pleito que iniciaba sobre la propiedad embargada de su deudor José J. Benítez, con preferencia a cualquier otro acreedor del mismo cuyo crédito fuere posterior a la anotación. *La Sociedad de Auxilio Mutuo* v. *Rossy,* 17 D.P.R. 83; *Banco de Puerto Rico* v. *Solá e Hijos et al.,* 26 D.P.R. 63.

¿Y en qué consistía la propiedad embargada? Consistía a nuestro juicio en un condominio indiviso en una finca que con otras formaba parte de una comunidad contractual.

Actuando voluntariamente con anterioridad al embargo de Carle Dubois, su deudor José J. Benítez había dispuesto de su condominio en la propiedad embargada haciéndole formar parte de una comunidad de bienes consistente en un negocio en pie que debería continuar desarrollándose de acuerdo con los pactos que conocemos adoptados en forma unánime por todas las partes interesadas.

Las fincas rústicas de la comunidad deberían seguir cultivándose y para ello se autorizó al administrador a contraer préstamos y los contrajo con el Banco de Nova Scotia desde antes del embargo y después.

A la fecha en que este pleito fué iniciado, no habiendo podido ponerse de acuerdo los partícipes para prorrogar la

comunidad, el Banco de Nova Scotia, acreedor de ésta por una crecida suma de dinero, se había hecho cargo de la administración de sus bienes.

¿Cuál crédito es preferente? ¿El de Carle Dubois contraído individualmente por José J. Benítez y asegurado desde agosto 11, 1930, por embargo anotado en el registro sobre una propiedad que su deudor había ya hecho formar parte de la comunidad que conocemos, o el del Banco de Nova Scotia contraído por esa comunidad desde antes de la anotación de embargo en forma general y después asegurado en forma especial mediante el pagaré hipotecario dado en prenda al banco? A nuestro juicio el del banco.

La ley autoriza la constitución de bienes en comunidad y dispone que a falta de contratos o disposiciones especiales, se regirá por las prescripciones del Código Civil. Art. 326 de dicho cuerpo legal (ed. de 1930).

Aquí hubo un contrato. Sus cláusulas predominan y la verdad es que examinándolas se observa que se formó por ellas una comunidad que va más lejos de las usuales. No se limita a la administración de un bien inmueble poseído en común, una casa por ejemplo, si que abarca la administración de fincas rústicas de importancia en pleno cultivo en relación con una corporación azucarera. Sin embargo, no por ello puede sostenerse que se formó algo no autorizado por la ley, sin personalidad para contraer obligaciones válidas.

La deuda para con el banco demandante cuyo carácter preferente acabamos de reconocer, lo fué por y para la comunidad en general, esto es, para el cultivo de sus fincas generadoras del producto que habría de repartirse entre los comuneros. Es deuda en tal virtud de la comunidad no sólo porque esa conclusión se impone por sí misma si que porque está prevista y pactada en el contrato de enero 14, 1927.

Y que esto puede ser así sin desnaturalizar los fines y el alcance del contrato de comunidad que regula el Código Civil, aunque reconociendo como reconocemos que se trata de.

un caso extremo que va casi a los lindes de la sociedad, se desprende de lo dispuesto en los artículos 328 y 333 de dicho cuerpo legal (ed. 1930), el último de los cuales, tal como fué enmendado por la Ley núm. 15 de 1916 (pág. 48) es como sigue:

"Todo condueño tendrá la plena propiedad de su parte y la de los frutos y utilidades que le correspondan, pudiendo en su consecuencia enajenarla, cederla o hipotecarla, y aún sustituir otro en su aprovechamiento y darla en arrendamiento, salvo si se tratare de derechos personales, pero el efecto de la enajenación o de la hipoteca con relación a los condueños, estará limitado a la porción que se les adjudique en la división al cesar la comunidad, y el efecto del arrendamiento será conferir al arrendatario, durante el término del contrato, las facultades del condueño en orden a la administración y mejor disfrute de la cosa común."

No es la comunidad un simple conglomerado de bienes inerte. Es algo activo. Los bienes requieren administración, y su conservación y el hacerlos producir a veces exigen gastos considerables para hacer frente a los cuales puede incurrirse en deudas que corresponde satisfacer en primer término a la comunidad.

Al propio tiempo los comuneros siguen siendo dueños de sus participaciones y pueden en su consecuencia enajenarlas y gravarlas.

En este caso concreto, a virtud del embargo quedó afectada la participación del comunero José J. Benítez para satisfacer la obligación personal que había contratado con Carle Dubois. *Pero*, lo dice el mismo legislador, *el efecto de la enajenación o de la hipoteca con relación a los condueños, estará limitado a la porción que se les adjudique en la división al cesar la comunidad.* Y limitado tiene necesariamente que quedar no sólo en relación a los condueños si que a los acreedores de los mismos.

Como en sus "Comentarios" dice Manresa con la penetración y claridad que caracterizan sus juicios:

712

"Conviene recordar también en la materia que las deudas pueden reconocer, en cuanto a su naturaleza, tres orígenes: 1°., que hayan sido contraídas durante la comunidad por un condómino de modo privativo y en su particular beneficio; 2°., que lo hubieren sido en pro de la comunidad y subsistente aún la indivisión; y 3°., que la deuda se contrajese de modo colectivo, sin expresión de cuotas y sin haberse estipulado solidaridad entre los condóminos. En el primer supuesto, como el condueño, en uso del ejercicio de sus derechos de propiedad, contrajo privativamente la deuda, responderá de ella la cuota adjudicable al dividirse la comunión; en el segundo tampoco vendrán obligados los demás comuneros, salvo la acción de reembolso del que hubiera pagado en nombre de los demás; y en el tercero, todos los partícipes estarán obligados al acreedor de manera proporcional a su cuota respectiva." 3 Manresa, Comentarios al Código Civil, pág. 529.

Habiendo llegado a las anteriores conclusiones, claro es que estimamos que no existen los errores que señala la parte apelante en su alegato.

En tal virtud *debe declararse el recurso sin lugar y confirmarse en todas sus partes la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.