Antonio J. Casanova, demandante y apelante, *v.* Heriberto
Sánchez, demandado y apelado.

Número 11733.

*Sometido:* 1 de marzo de 1956. *Resuelto:* 30 de abril de 1956.

*Enrique Tristani, Jr.,* abogado del apelante; *Héctor Lugo
Bougal* y *Carlos J. Irizarry Yunqué,* abogados del apelado.

El Juez Presidente Señor Snyder emitió la opinión del Tribunal.

Alegando que era dueño de cierta casa y solar en Juana
Díaz, el Dr. Antonio J. Casanova radicó ante el Tribunal Superior una demanda de desahucio en precario por detentación contra Heriberto Sánchez. La cuestión envuelta es si
el tribunal sentenciador cometió error al declarar sin lugar
la demanda por el fundamento de que de la evidencia aducida durante el juicio surgía un conflicto de títulos.

El demandante presentó en evidencia un documento titulado "Escritura de Venta Judicial" otorgado en 1954 por él

y por el alguacil del Tribunal de Distrito de Juana Díaz. Se insertaban en esta escritura la sentencia y las conclusiones de hecho y de derecho de dicho tribunal de distrito en otro pleito incoado por el Dr. Casanova contra Heriberto Sánchez y su esposa en cobro de dinero. Las referidas conclusiones de hecho y de derecho dicen que el Dr. Casanova prestó a Heriberto Sánchez varias cantidades de dinero durante cierto período a fin de que Sánchez pudiera reparar la casa aquí envuelta; que el dinero fué usado con dicho fin pero nunca le fué devuelto por Heriberto Sánchez; y que el Dr. Casanova tenía derecho a una sentencia por $1,800 contra Heriberto Sánchez y su esposa. La escritura contiene la sentencia y manifiesta que la misma fué confirmada en apelación por el Tribunal Superior. Sigue diciendo la escritura que en ejecución de la referida sentencia de $1,800, todo derecho, dominio, título e interés de los demandados en la casa y solar fueron vendidos en pública subasta al Dr. Casanova por la suma de $600; y que el alguacil, por consiguiente, en la escritura trasmitía por título de venta judicial y enajenación la casa y solar a favor del Dr. Casanova.

El Dr. Casanova declaró que Heriberto Sánchez, por documento privado otorgado en 1949 en forma de declaración jurada, le vendió la casa y solar, pero que más tarde Heriberto Sánchez y él convinieron verbalmente en dejar sin efecto la venta y que el Dr. Casanova convino en prestarle a Heriberto Sánchez el dinero para reconstruir la casa.

Emilio Sánchez declaró por el demandado sustancialmente lo siguiente: Él es padre del demandado. Su esposa y él tuvieron dos hijos, Carmen y Oscar, en adición a Heriberto. Su esposa y él compraron en 1925 la casa y solar aquí envueltos a Juan José Arroyo y a María Cid mediante escritura pública. Esta escritura fué luego presentada en evidencia. Su esposa murió en 1940. Oscar nació en 1935. Nunca le ha vendido esta propiedad a persona alguna. A la casa se le han hecho bastantes reparaciones, las más recien-

tes hacía tres meses, por las cuales pagó. No vive en la casa. El testigo, su segunda esposa y su hijo Oscar viven en otra casa. Heriberto y su esposa han vivido en la casa aquí en-vuelta durante tres años porque Heriberto tenía derecho a vivirla como hijo y como heredero.

En el contrainterrogatorio, se mostró a Emilio Sánchez un documento privado otorgado mediante declaración jurada en 1947, que decía que él y sus hijos, Heriberto y Carmen, vendían la casa y solar de que se trata a Justo Muñoz por $125. Este documento decía que Emilio Sánchez y Rosa Valls Ortiz, su esposa, compraron la casa y solar a Juan José Arroyo y a María Cid en 1925 mediante escritura pública; que Rosa Valls había muerto; y que Emilio Sánchez, como viudo, y sus dos hijos, Heriberto y Carmen, eran los únicos y universales herederos de Rosa Valls. El documento de 1947 no mencionaba a Oscar, quien entonces era menor de edad y era el otro hijo de Emilio Sánchez y de Rosa Valls. Declaró el testigo que el documento privado de 1947 arriba mencionado no tuvo el propósito de que fuera una venta de la casa y del solar, sino más bien una hipoteca a Justo Muñoz para garantizar un préstamo de éste, que el testigo pagó al mes siguiente. Esta declaración jurada de 1947 otorgada a favor de Muñoz fué luego presentada en evidencia.

El demandado también presentó en evidencia una mo-ción radicada en el antes referido caso en cobro de dinero incoado por el Dr. Casanova contra Heriberto Sánchez y su esposa ante el Tribunal de Distrito. Esta moción se radicó en 1954 a nombre de los demandados "y/o Carmen y Oscar Sánchez", solicitando la suspensión de la venta de la casa y del solar en pago de la sentencia en cobro de dinero a favor del Dr. Casanova contra Heriberto Sánchez.(¹) La moción

---

(¹) Oscar, quien nació en 1935, todavía era menor de edad cuando se radicó esta moción en 1954. Por consiguiente, él no podía incluirse en tal moción a nombre propio. La moción fué firmada, ostensiblemente en re-presentación de Heriberto, de Carmen y de Oscar, por el abogado que re-presentó a Heriberto en el caso en cobro de dinero y en éste.

alegaba que Rosa Valls y Emilio Sánchez habían fallecido, dejando a Heriberto, a Oscar y a Carmen como sus únicos y universales herederos; y que Heriberto no era el dueño de los bienes sino que meramente tenía en los mismos una tercera parte indivisa. (²)　Esta moción fué declarada sin lugar y, como ya se ha indicado, se verificó la subasta de la casa y del solar a favor del Dr. Casanova.

En el turno de réplica Justo J. Muñoz declaró por el demandante.　Manifestó que la declaración jurada de 1947 mediante la cual le compró la propiedad a Emilio Sánchez y a sus hijos, Heriberto y Carmen, era, según surgía de su faz, una compraventa y no una hipoteca.　Dijo también que por documento privado en forma de declaración jurada le vendió los bienes el 5 de septiembre de 1949 a Heriberto Sánchez por $200.　Más tarde este documento fué presentado en evidencia.　El testigo nunca fué informado por Emilio, por Heriberto o por Carmen Sánchez, cuando les compró la propiedad en 1947, de la existencia de Oscar, quien entonces era menor de edad.　Posteriormente la casa "desapareció" y se edificó una nueva en el solar.

En su turno de dúplica el demandado presentó en evidencia un documento privado en forma de declaración jurada por el cual en 5 de septiembre de 1949 Heriberto Sánchez le vendió al Dr. Casanova la casa y el solar.

El Dr. Casanova fué llamado entonces como testigo en el turno del demandado.　Se llamó la atención del testigo hacia parte de su testimonio en el pleito en cobro de dinero donde manifestó que la transacción con Heriberto fué un préstamo. El testigo insistió en que dicho testimonio no era inconsistente con su testimonio en este caso al efecto de que él y Heriberto originalmente habían firmado un documento mediante el cual Heriberto le vendió la casa y el solar al testigo, pero que pocas horas después hicieron un convenio verbal mediante el

---

(²) Emilio Sánchez aparentemente murió después de declarar en este caso.

cual dejaron sin efecto la venta y el Dr. Casanova le prestó a Heriberto el dinero para reparar la casa.

El tribunal sentenciador resolvió que del anterior testimonio surgía un conflicto de títulos que requería que se declarase sin lugar la demanda. La corte dijo en parte lo siguiente:

"Resalta a la vista el hecho de que si el demandante Dr. Antonio J. Casanova adquirió el título de la propiedad que nos ocupa del demandado en el año 1949, ¿por qué razón tenía que concurrir entonces a una subasta pública en el año 1954 para adquirir la misma propiedad? Toda esta serie de operaciones comerciales nos inclina a creer que tanto la venta efectuada al Sr. Muñoz, como al demandante Dr. Casanova, eran representativas únicamente de los préstamos efectuados por ellos al demandado en virtud de los documentos antes referidos.

"La doctrina que impera en Puerto Rico es al efecto de que cuando el título del demandante en una acción de desahucio tiene su origen en una ejecución de una sentencia que es nula, dicho título es nulo y tal nulidad es una buena defensa en el procedimiento de desahucio porque levanta un conflicto de títulos que no puede ser resuelto dentro de los estrechos límites del procedimiento. *Sucesores de Huertas González* v. *Rosario,* 50 D.P.R. 360 y *Dávila* v. *Sotomayor, 35 D.P.R. 794.*

"En el caso que nos ocupa la parte demandada presentó prueba tendente a demostrar la nulidad o la inexistencia de título de la parte demandante y, además, para establecer que su defensa no es un pretexto. De todos modos, somos de opinión que el conflicto de título o la inexistencia o nulidad del título del demandante no debe resolverse en un procedimiento sumario como lo es el desahucio y sí en un juicio declarativo donde ambas partes, y también la sucesión de doña Rosa Valls Ortiz puedan presentar abundante prueba para aclarar esta titulación y los alegados traspasos a Muñoz y Dr. Casanova que tienen visos de ser garantías de préstamos y no contratos de compraventa."

Un demandante no tiene derecho a lanzar a un demandado en un pleito de desahucio en precario si el título del primero, obtenido en una venta judicial, es nulo. *De León* v. *Pérez,* 54 D.P.R. 215. Pero no estamos de acuerdo en que Heriberto Sánchez tiene derecho a invocar dicha regla bajo

las circunstancias de este caso. Aquí hubo una serie de documentos privados mediante los cuales se efectuaron las siguientes supuestas ventas de la propiedad: 1) en 1947, de Emilio Sánchez y de dos de sus hijos, a Justo Muñoz; 2) en 5 de septiembre de 1949, de Muñoz a Heriberto Sánchez; 3) en 5 de septiembre de 1949, de Heriberto al Dr. Casanova. Es cierto que se presentó suficiente evidencia para levantar la cuestión al efecto de que estas transacciones eran para garantizar préstamos y no eran compraventas.([3]) Pero aún si tratásemos estas transacciones como garantías y no como compraventas, esto a lo sumo quiere decir que la propiedad todavía pertenecía a Emilio Sánchez y a sus hijos cuando se verificó en 1954 la venta judicial a favor del Dr. Casanova. Bajo esta teoría Heriberto tenía un interés en los bienes para dicha fecha. Por consiguiente, el Dr. Casanova tenía derecho en 1954 a ejecutar la sentencia firme en cobro de dinero dictada en su favor contra Heriberto mediante venta judicial del derecho, dominio e interés de Heriberto en los bienes. *Carle Dubois* v. *Benítez*, 46 D.P.R. 188. *Cf. Bank of Nova Scotia* v. *Carle Dubois*, 52 D.P.R. 704; *Benítez* v. *Bank of Nova Scotia*, 110 F.2d 169, 172 (C.A. 1, 1940). Otros miembros de la familia de Heriberto, que no son partes en este pleito, pueden también tener un interés en los bienes. Pero Heriberto no puede levantar dicho hecho como una defensa válida en este pleito de desahucio instado en su contra por el Dr. Casanova, quien compró en la venta judicial todo derecho, dominio e interés que Heriberto pudiera tener en la propiedad. Véanse *Ríos* v. *Román*, 71 D.P.R. 207, y casos citados; *Crespo* v. *Irizarry*, 71 D.P.R. 963, 968; *Meléndez* v. *Pacheco*, 75 D.P.R. 95, 99; *Colón* v. *Rivera*, 61 D.P.R. 560, 564; *Delgado* v. *Pimentel et al.*, 20 D.P.R. 556; *J. González*

---

([3]) De ser préstamos estas transacciones, presumiblemente la declaración jurada del 5 de septiembre de 1949 de Muñoz a favor de Heriberto era el método de cancelar la garantía una vez pagado el préstamo. En igual forma, la declaración jurada otorgada el mismo día por Heriberto a favor del Dr. Casanova era para garantizar otro préstamo.

& Co. v. *Aponte*, 55 D.P.R. 826; *Municipio de Ponce* v. *Collazo*, 56 D.P.R. 509. *Cf. Chabrán* v. *Méndez*, 74 D.P.R. 768, 775–76.

Por otro lado, si aceptamos de su faz los documentos privados como compraventas, la cadena de títulos demuestra que el Dr. Casanova adquirió los bienes el 5 de septiembre de 1949 y ha sido dueño de ellos desde dicha fecha, excepto por el posible defecto de que Oscar, el menor, no estuvo representado en la venta en 1947 hecha a Muñoz por Emilio, Heriberto y Carmen. Pero aquí nuevamente Heriberto, habiendo vendido su interés en los bienes al Dr. Casanova, no puede defenderse del desahucio descansando en el hecho de que su hermano Oscar, quien no es parte en este pleito, pueda tener todavía un interés en los bienes. Véanse los casos citados en el párrafo anterior. (⁴)

El caso se reduce a lo siguiente: Tratando los documentos privados como garantías de préstamos y no como compraventas, antes de la venta judicial en 1954 Heriberto era el dueño de la propiedad, en unión de su hermano y de su hermana, y el Dr. Casanova adquirió el interés de Heriberto en los bienes en virtud de la venta judicial en 1954. Tratando los documentos privados como compraventas, los bienes han pertenecido al Dr. Casanova desde el 1949, con la posible excepción del interés de Oscar. De esto surge que no hay conflicto de títulos *en el que pueda basarse Heriberto para permanecer en posesión de estos bienes en contra del Dr. Casanova,* quien bajo cualquiera de las dos teorías ahora es dueño de todo derecho, título e interés en la propiedad que antes tenía Heriberto. Resolver lo contrario equivaldría a que un demandado que no tuviera ningún derecho en los bienes pudiera defenderse con éxito de un desahucio levantando la posible contención de que el demandante, que por lo menos es condueño

---

(⁴) Los documentos privados no cumplían con los requisitos del art. 1232(1) del Código Civil, ed. de 1930, 31 L.P.R.A. sec. 3453(1). Pero los mismos obligaban a las partes que los otorgaron, arts. 1230 y 1231 del Código Civil, 31 L.P.R.A. secs. 3451 y 3452.

de la propiedad, no es el único dueño de la misma. ˙ Esta es una cuestión a determinarse entre los supuestos condueños. La misma no es una defensa adecuada en una acción de desahucio instada por un demandante, que sin duda alguna es por lo menos condueño de los bienes, contra un demandado que claramente no tiene interés en el título de la propiedad y no tiene derecho a usarla o poseerla.

 El tribunal sentenciador resolvió que era innecesario pasar sobre la contención del demandado al efecto de que tenía derecho como persona en el servicio militar a la suspensión de este procedimiento bajo la Ley sobre Rehabilitación Civil de Soldados y Marinos de 1940, 50 U.S.C.A. App. sec. 521. El demandado no ofreció prueba para establecer que su habilidad para llevar su defensa fué sustancialmente afectada por su servicio militar. Por consiguiente, no tenía derecho a suspender el procedimiento a tenor con la sec. 521. *Canet* v. *Corte*, 61 D.P.R. 150.

*La sentencia del Tribunal Superior será revocada y se dictará nueva sentencia declarando con lugar la demanda para el desahucio del demandado de la casa y solar aquí envueltos.*